No. 33,566

FLORENCE BOTT, *Appellant,* v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, *Appellee.*

(78 P. 2d 860)

Opinion filed May 7, 1938.

*C. L. Kagey, Hal M. Black* and *L. M. Kagey,* all of Wichita, for the appellant.

*Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, A. M. Buzzi* and *Paul J. Donaldson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: The defendant, the Equitable Life Assurance Society, issued and delivered in Ohio to Franklin H. Bott, who lived in that

state, two policies of life insurance, with disability benefits. One policy for $1,000 was dated August 6, 1913; the second policy for $2,500 was dated November 13, 1924. The insured died April 15, 1934, and the death benefits were duly paid to the plaintiff, who was the beneficiary under the policies. The present action was brought to recover the permanent disability benefits under the two policies. This is an appeal from an order sustaining a demurrer to the plaintiff's second amended petition.

In plaintiff's petition it was alleged that the insured, Franklin H. Bott, had been ill for a good many years prior to his death; that three years and four months before his death the insured suffered a complete nervous breakdown, which was caused by a combination of diseases; that he collapsed at that time and was totally disabled until his death. It was further alleged:

". . . Plaintiff did not know the terms of the policies and did not know where the policies were during the last three and one half years of his life, except that plaintiff had been advised by the agent of the company, one G. W. Durham, to whom she paid premiums, that the policies were with the defendant company. Plaintiff was ignorant of the provisions in said policies for the payment of disability on the larger one, and the waiver of premiums in both policies, and her husband, during the entire period of his illness, was not mentally competent to describe said policies or their terms to plaintiff. Plaintiff was informed by the said defendant company as to the amounts of premiums due and she paid said premiums from the time of her husband's collapse until the date of his death to said G. W. Durham, agent of the defendant company. . . . Since her husband had been unable, because of his illness and mental condition, as aforesaid, even to inform plaintiff that he had such a policy and that it contained such provisions, plaintiff was unable to make such proof during his lifetime, and because of the impossibility of making proof during the lifetime of her husband and of the further fact that the company took up the policies and had them in its possession at the time of her husband's death and only paid her the amount that she then thought to be due and was represented to be due, it was physically impossible for this plaintiff to make any proof of claim. . . ."

The policy for $1,000 provided:

"If the insured, before attaining the age of sixty years and after payment of premiums for at least one full year and before default in the payment of any subsequent premium, shall furnish due proof to the society that he has become wholly and permanently disabled by bodily injury or by disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation, and that such disability has then existed for not less than sixty days, the society will waive payment of the premiums thereafter becoming due under this policy."

The second policy for $2,500 provided:

"(I) DISABILITY BENEFITS before age sixty shall be effective upon receipt of due proof, before default in the payment of premium, that the insured became totally and permanently disabled by bodily injury or disease after this policy became effective and before its anniversary upon which the insured's age at nearest birthday is sixty years, in which event the society will grant the following benefits:

"(a) Waive payment of all premiums payable upon this policy falling due after the receipt of such proof and during the continuance of such total and permanent disability; and

"(b) Pay to the insured a monthly disability-annuity as stated on the face hereof; the first payment to be payable upon receipt of due proof of such disability and subsequent payments monthly thereafter during the continuance of such total and permanent disability."

Plaintiff asks judgment for the premiums paid on the $1,000 policy during the disability of the insured amounting to $118.16; also, for the premiums paid on the $2,500 policy during the same period amounting to $243.60; also, for the monthly benefits of $25 per month on the $2,500 policy for the same period amounting to $1,000, with interest on the several items.

Both policies were kept in full force and effect until the death of the insured. Although the insured lived three years and four months after his alleged collapse it is admitted that neither the insured nor any person for him furnished proof to the defendant company of such total disability.

The chief question presented is whether the provisions in the policies above quoted as to furnishing of proof of disability are conditions precedent to the waiver of the payment of the premiums on both policies, and to the payment of disability benefits on the larger policy.

It is asserted that there was an impossibility of performance on the part of the insured, not only because of his disability, but because the policies were in the possession of the defendant company. It is alleged that plaintiff never saw the policies while the insured was living and was unable to obtain copies thereof until about June 1, 1936, which was nearly two years after the death of the insured. It is not claimed, however, that the plaintiff was unaware of the existence of the policies. In fact, as alleged in the petition, she paid the premiums on the policies after the date of insured's disability. Neither is there any allegation in the petition that the plaintiff, who was the beneficiary under the policies, made any effort

or used any diligence during the period of disability to obtain the policies or secure copies thereof. The insurance contract imposed no duty on the defendant company to inform the plaintiff as to the provisions in the policies. The insured lived three years and four months after his alleged disability, thus affording ample time for investigation by those in interest as to the contents of the policies and for proof according to their terms. (*Eagan v. New York Life Ins. Co.*, 60 F. 2d 268; *Chambers v. Franklin Life Ins. Co.*, 80 F. 2d 339.)

The $1,000 policy provides that if the insured "shall furnish due proof" of disability the defendant company would waive payment of the premiums "thereafter becoming due under the policy." In the larger policy the condition is that "upon receipt of due proof" of disability the insurer will waive payment of premiums "falling due after the receipt of such proof"; and that insurer will pay the monthly benefits "upon receipt of due proof."

These provisions are free from ambiguity. The receipt by the company of the proof of the disability is definitely made a condition precedent to the waiver of the payment of the premiums in the two policies, or the payment of the monthly annuities in the larger policy. (*Bergholm v. Peoria Life Ins. Co.*, 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416.)

We think the question as to whether the conditions in the policies were precedent or subsequent was settled by the decision of this court in *Smith v. Missouri State Life Ins. Co.*, 134 Kan. 426, 7 P. 2d 65. The condition in the policy as to waiver was as follows:

"'After one full annual premium shall have been paid and before default in payment of any subsequent premium, if the insured, prior to attaining age sixty, shall furnish evidence satisfactory to the company, that he has been wholly disabled from bodily injury or disease and that he will be permanently, continuously and wholly prevented thereby for life from pursuing any and every gainful occupation, the company, during the continuance of such disability, will waive payment of any premium payable under this policy as it becomes due. . . .'" (p. 426.)

In that case it was said:

"Touching the contention that insanity should excuse the furnishing of proof, it will be noted that the law is settled beyond any question that insanity does not excuse the payment of premium, and if it does not excuse the payment of premium there is no reason why it should excuse the failure to furnish proof of disability. On its face the rule may seem harsh, but an examination into the basic principles of the insurance contract is convincing

that it is sound and reasonable. The payment of premium is the life of the contract. All actuarial calculations are based upon the payment of premium at the time specified in the contract, and by reason thereof the state is able to determine whether the company can make good its contracts. If the beneficiary may wait until more than a year after the claimed disability and the death of the insured to make the claim of total disability, which is generally a question of fact, then the certainty of liability of insurance companies cannot be established nor the amount of their reserve definitely determined. Anything that destroys the certainty of contracts necessarily affects the whole structure, and the sacredness of contracts should not be unnecessarily invaded or impaired by judicial interpretation.

"We are persuaded that when the contract in question is considered in its entirety that it must be held that it was the intent of the parties to provide a means by which the insured might be relieved from the payment of premium, and to entitle him to this benefit he must not only be totally disabled, but must furnish proof of disability to the company while the policy is in force." (p. 435.)

In the Smith case the authorities were carefully considered, and we see no reason to depart from the doctrine there announced. (See, also, *New England Mut. Life Ins. Co. v. Reynolds*, 217 Ala. 307, 116 So. 151; *Berry v. Lamar Life Ins. Co.*, 165 Miss. 405, 142 So. 445, 145 So. 887; *Eagan v. New York Life Ins. Co.*, 60 F. 2d 268; *Chambers v. Franklin Life Ins. Co.*, 80 F. 2d 339.)

In *Courson v. New York L. Ins. Co.*, 295 Pa. 518, 145 Atl. 530, the plaintiff sued to recover seven annual premiums which had been paid on a life insurance policy while the insured was insane. The action was brought after the death of the insured. The policy contained the following provision:

"The company, by endorsement hereon, will waive payment of the premiums thereafter becoming due, if the insured, before attaining the age of sixty years and after paying at least one full annual premium and before default in the payment of any subsequent premium, shall furnish proof satisfactory to the company that he has become wholly and permanently disabled by bodily injury or by disease so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for remuneration or profit, or from following any gainful occupation." (p. 520.)

The petition alleged that after the payment of one annual premium the insured became mentally deranged and disordered and continued so until his death, and because of his mental condition he was totally and permanently disabled. It was further alleged that because of the insured's insanity he did not know or realize that he was wholly and permanently disabled or that the policy provided for a waiver of premiums in such event. The plaintiff

argued that making proof of disability was a condition subsequent, but the court said:

"The company was only to waive the premiums and endorse the waiver on the policy if the policyholder had furnished proof satisfactory to the company of his disability. It was the judge of the proof. The requirement of notice of. the disability before the company acted was a salutary one. It enabled the company to investigate before waiving payment of the premiums and guarded it against malingerers and frauds. We are not here concerned with a lapsing of the policy; it was in full force when death came, and the insured's beneficiary is now receiving the sums which the policy provides. What is being tried is to recover back the premiums paid without having given the company opportunity to look into the matter, while its insured was alive, as to whether his actual disability was such as to lead the company to waive their payment. It is true, as appellant points out, that the supreme court of South Carolina, in *Levan v. Metropolitan Life Ins. Co.*, 138 S. C. 253, 136 S. E. 304, under a somewhat similar provision in a policy, held that a delay in paying the premium because the insured was insane did not forfeit it because of the waiver provision. Here we are not dealing with the lapsing of a policy because the premium was not paid as a result of insanity with a disability clause in effect, but with an endeavor to take back the premiums paid where the insured had not met the requirements of the contract. *Pfeiffer v. Missouri State Life Ins. Co.*, 174 Ark. 783, 297 S. W. 847, [54 A. L. R. 600], is likewise a case where it was sought to forfeit the policy. We are not required to state what our judgment would be under such a state of facts. The conclusion to which we have come, that the furnishing of proof of disability was a condition precedent to a waiver of the premiums, was reached by the supreme court of Alabama in *New England Mutual Life Ins. Co. v. Reynolds*, [217 Ala. 307], 116 So. 151." (522.)

In *New England Mut. Life Ins. Co. v. Reynolds*, supra, the court said:

"It is further of importance that any issue as to the fact of disability be adjusted while the insured is living, not postponed until an issue must be made with the beneficiary after his death. In cases of insanity as the result of chronic disease, great difficulty may often arise in fixing the date when the border line is passed between mental capacity and incapacity to contract." (p. 310.)

In *Berry v. Lamar Life Ins. Co.*, supra, the court used similar language:

"There is, in our opinion, sound reason why insurance companies should be permitted in· their policies a provision requiring proof to be made before the waiver of the policy becomes effective. It is, of course, necessary for the success of the life insurance business that unmerited or fraudulent claims should be rejected, and, in order to determine whether a claim is just and bona fide, it should have opportunity to investigate the facts at the time the disability occurs or accrues upon which the waiver of premiums depends." (p. 415.)

In the case at bar the suit was brought two years, lacking one day, after the death of the insured. The action is to recover disability benefits and premiums for a period of three years and four months prior to the death of the insured. To exonerate itself from liability the defendant must go back more than five years and show that the insured was not physically or mentally disabled. Statutes of limitations are enacted to prevent fraudulent and stale claims from springing up at great intervals of time and surprising the parties or their representatives when all the proper vouchers and evidences are lost or the facts have become obscure from the lapse of time or defective memory, death or removal of witnesses. Such statutes apply with full force to meritorious claims. (37 C. J. 685.) To deny to an insurance company the opportunity to protect itself against stale and fraudulent claims, by requiring proof of disability to be timely made, would not only put a heavy burden on the company, but would disregard the sanctity of contracts.

Finally, it is contended that we must apply the law of Ohio where the policy was delivered. Assuming this to be true, our attention is directed to the case of *W. & S. Life Ins. Co. v. Smith*, 41 Ohio App. 197, 180 N. E. 749. The syllabus in that case reads:

"Where an insurance company by a rider on a policy agrees to waive the premiums fixed by the policy, if the insured becomes wholly disabled and such disability continues for ninety days prior to proof of such disability, such waiver cannot be invoked unless it be shown that both of these conditions have been satisfied."

We do not construe that case as supporting the contention of plaintiff. (See *Mutual Life Co. v. Johnson*, 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. 398.)

We think the demurrer to plaintiff's petition was properly sustained. The judgment is affirmed.